UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANA MIRA VILLEGAS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Civil No. 26-10851-LTS |
| | ) |
| DAVID WESLING et al., | ) |
| | ) |
| Respondents. | ) |

MEMORANDUM AND ORDER ON PETITION
FOR WRIT OF HABEAS CORPUS (DOC. NO. 1)

March 20, 2026

SOROKIN, J.

Ana Mira Villegas, a citizen of Colombia who is in immigration detention, seeks a writ of

habeas corpus under 28 U.S.C. § 2241.  Villegas's petition is ALLOWED for the reasons and to

the extent described below.

I.    BACKGROUND

Villegas entered the United States in October 2024 without inspection.  Doc. No. 1 ¶¶ 1,

19.  She was stopped at the border and detained by immigration authorities, who initiated the

expedited-removal process governed by 8 U.S.C. § 1225(b)(1).  Doc. No. 11-1 ¶ 8.  Villegas

claimed a fear of returning to Colombia, where she experienced "years of severe physical,

sexual, and emotion[al] abuse."  Doc. No. 1 ¶ 19.  She was therefore referred in November 2024

to U.S. Citizenship and Immigration Services ("USCIS") for a credible-fear review.  Doc. No.

11-1 ¶ 9.

USCIS found Villegas's fear credible and, on that basis, instituted full removal

proceedings during which Villegas could seek asylum or other relief from removal.  Id. ¶ 10.  To

that end, USCIS granted Villegas temporary parole pursuant to 8 U.S.C. § 1182(d)(5)(A).  Id. ¶ 11.  When she was released on November 22, 2024, USCIS issued and served on Villegas a Notice to Appear ("NTA").  Doc. No. 1-3 at 2.  The NTA noted USCIS's finding that Villegas had "demonstrated a credible fear of persecution or torture" if returned to Colombia.  Id.  In a series of boxes requiring the person completing the form to select which one of three categories describes the noncitizen, the Supervisory Asylum Officer completing Villegas's NTA marked this one: "You are an alien present in the United States who has not been admitted or paroled."  Id.  That option appears beneath one for a noncitizen deemed "an arriving alien"—the box beside which was not marked on Villegas's NTA.  Id.

Villegas moved to Massachusetts, and her removal proceedings went forward in the Chelmsford Immigration Court.  Doc. No. 1 ¶¶ 2, 10.  In late November 2025, Villegas was arrested by local police and charged in Chelsea District Court with assaulting a family member. Doc. No. 11-1 ¶ 12.  She was granted pretrial release by the state court, but Immigration and Customs Enforcement ("ICE") officers detained her promptly thereafter.  Id.  Her arrest by ICE was pursuant to a Form I-200 warrant—a document which facially invokes 8 U.S.C. § 1226.  See id. ¶ 12; Doc. No. 16-1 at 7.  Villegas was processed at ICE's Field Office in Burlington, Massachusetts, and then transported to a county jail in Dover, New Hampshire.  Doc. No. 11-1 ¶ 13.  She remained at that facility until the morning of February 13, 2026.  Id. ¶ 14.

Meanwhile, Villegas's removal proceedings continued.  She secured pro bono counsel, and her lawyer entered his appearance in the Immigration Court in late January 2026.  Doc. No. 1-4.  An individual hearing on the merits of her applications for asylum and other forms of relief from removal was scheduled to occur in Chelmsford on February 23, 2026.  Doc. No. 1 ¶¶ 2, 22–

2

23.  Proceedings on her state criminal charges, where she is represented by a public defender, were also ongoing.[1]  Id. ¶ 24.

On the morning of February 13, 2026, Villegas's immigration lawyer traveled to New Hampshire to meet with Villegas and prepare for her looming asylum hearing.  Id. ¶ 1.  When he got to the county jail, he learned from staff that ICE had transferred Villegas out of the facility less than an hour before the lawyer arrived.  Id.  This came as a surprise to counsel, who sprang into action.

Counsel promptly contacted ICE, identifying himself as Villegas's lawyer, requesting information on her location, and asking to speak with her "deportation officer."  Doc. No. 16-1 at 13–14 (email sent at 10:13 AM).  While he waited for a response, he drafted the habeas petition now pending before this Court and filed it at 2:44 PM.  Doc. No. 1.  At 3:20 PM, this Court docketed an order directing that the petition be served, setting the deadline for the respondents' answer, and prohibiting Villegas's transfer out of Massachusetts (and her removal from the United States) absent advance written notice.  Doc. No. 4.  Counsel wrote to ICE again later that day asking to schedule a phone call or visit "as soon as possible."  Doc. No. 16-1 at 13 (email sent at 5:13 PM).  Both of counsel's messages were sent to a publicly available email address for ICE's Boston Field Office (located in Burlington).  Both convey counsel's lack of information about his client's location, with the latter reflecting his belief that Villegas might still be located "at the Burlington field office."  Id.  Counsel received no response to either of his emails that day.  See Doc. No. 14 at 4.

---

[1] The Chelsea District Court apparently issued a default against Villegas in January, when she failed to appear for a court date in her pending criminal case due to her ongoing detention by ICE.  See Doc. No. 1 ¶ 24.

On February 17, 2026, the respondents sought a one-day extension of their answer deadline. Doc. No. 7. The motion explained that Villegas had been transferred out of Massachusetts and that the respondents "need[ed] more time to confirm . . . the timeline of her transfer." Id. at 1. The Court allowed the motion. Doc. No. 10. On February 18, the respondents filed a memorandum opposing the petition, arguing the Court lacks jurisdiction "as Petitioner was on a plane which departed Massachusetts before the Petition was filed" and, in the alternative, defending the lawfulness of Villegas's detention. Doc. No. 11. The memorandum was accompanied by a declaration from an ICE representative stating Villegas left Massachusetts on a flight that departed from Hanscom Field Airport at 1:34 PM on February 13 and arrived in Alexandria, Louisiana, approximately three hours later.[2] Doc. No. 11-1 ¶ 15.

After reviewing the respondents' submission, the Court ordered them to supplement it by identifying the basis for the declarant's statements and supplying the underlying documents. Doc. No. 12. The respondents timely did so. Doc. No. 13. Villegas then replied, at the Court's invitation, disagreeing with the respondents' assertion that the Court lacked jurisdiction. Doc. No. 14. Review of those submissions led the Court to direct each party to provide further briefing. From Villegas, the Court sought briefing on the merits of her claims; from the respondents, the Court sought a response to the jurisdictional arguments Villegas had advanced, which relied on cases and ICE policies that the respondents had not addressed previously. Doc. No. 15.

---

[2] For reasons the respondents have not explained, Villegas then spent the weekend being shuttled around the southern half of the United States. Doc. No. 11-1 ¶¶ 16–19. On February 14, ICE flew her from Alexandria to El Paso, Texas, and then from El Paso to Mesa, Arizona. Id. On February 16, ICE returned her from Mesa to Alexandria, then finally took her to the South Louisiana ICE Processing Center, where she remains. Id.

Both parties timely made their submissions. Doc. Nos. 16, 17. Villegas's memorandum addressed fully the merits issues before the Court, bringing her arguments into sharper focus. The respondents persisted in their jurisdictional challenge, pressing their prior arguments. They faulted Villegas for not naming as the respondent the superintendent of the county jail from which ICE had removed her before the petition's filing. See Doc. No. 17 at 5 (identifying that person as "her immediate custodian, even while being transferred"). Then, the respondents criticized her for not filing in the place where she was physically confined when the petition was filed. See id. at 6–7 (noting she had departed before the petition was filed but not identifying where the "district of confinement" was at that time). They concluded by arguing that Villegas had not identified "extraordinary circumstances" that justify deviating from "the immediate custodian and district of confinement rules," but they offered no suggestion as to how those rules should be reconciled in this case.[3] Id. at 8.

Seeking a clearer understanding of the respondents' position—and aware from various other recent cases that, confronted with a habeas petition filed after a noncitizen has been moved elsewhere, the government often pairs a jurisdictional challenge with a proposal that the matter be transferred to a District where the government agrees jurisdiction would lie—the Court directed the respondents to "supplement their memorandum on jurisdiction with a notice that informs the Court whether, in their view, the United States District Court for the District of New Hampshire had jurisdiction over this habeas petition at the time of its filing or, if not, which United States District Court did have jurisdiction" then. Doc. No. 18.

---

[3] The final paragraph of the respondents' submission implied that Villegas should have named the superintendent of the New Hampshire county jail as the respondent in a petition she then filed in whatever District was located along her flight path, an hour from Hanscom. Doc. No. 17 at 10. That paragraph, however, does not reference Villegas by name and uses a male pronoun; it also does not identify the "district of confinement" at the relevant time. Id.

The respondents timely replied, but their submission contained no answer to the Court's question.  Doc. No. 19.  Instead, the respondents "respectfully" informed the Court that its inquiry was "not the correct consideration," and reminded the Court that "the question of whether jurisdiction is proper does not befall [sic] on them."  Id. at 1–2.  The respondents asserted that an ICE Field Office Director "does not have . . . authority of the body" of a noncitizen in ICE's custody, and suggested again that "the person who had the ability to produce the body" of Villegas on the afternoon of February 13 "was the Superintendent of" the county jail in New Hampshire from which ICE had retrieved Villegas that morning, "not the ICE Field Office Director."  Id. at 2–3.  The respondents ended the submission by again asking the Court to dismiss this action for lack of jurisdiction—and again declined to identify another federal court that the respondents believed would have jurisdiction.  Id. at 3.

It is on this record that the Court has assessed the legal issues presented in this case.

II.    JURISDICTION

This Court need not linger long over the question of jurisdiction, because another Judge in this District has considered nearly identical circumstances and explained persuasively why the respondents' jurisdictional challenge fails.  In Van Tran v. Hyde, a petition challenging ICE's detention of a noncitizen was filed by the noncitizen's lawyer, who was present when ICE took her client into custody but did not know where the client had been taken.  No. 25-cv-12546, 2025 WL 3171210, at *1 (D. Mass. Nov. 13, 2025).  The government later disclosed that, when the petition was filed, the petitioner was on a flight bound for Buffalo, New York.  Id.

In a decision that addressed and rejected the same arguments the respondents raise in this case, Judge Burroughs explained why she had acquired and retained jurisdiction over the petition as filed—including its claims against supervisory-level respondents like the Field Office

Director.[4]  Id. at *2–4.  Judge Burroughs set the scene this way: "At the time of filing, unbeknownst to Petitioner's attorney, Petitioner was on an airplane to New York.  Petitioner's counsel did not know where Petitioner was or even where he was being taken, and it remains unclear who his immediate custodian was at that time."  Id. at *3 (citations omitted).  Replace "New York" with "Louisiana," and change the pronouns, and the same description applies here.

Judge Burroughs observed that applying the immediate-custodian rule was "more complicated than . . . usual" because, "despite her best efforts, Petitioner's counsel didn't know who had custody of Petitioner when she filed his habeas corpus petition."  Id.  Citing precedent from the Supreme Court and the D.C. Circuit, Judge Burroughs found that "the immediate-custodian rule must bend in order to preserve Petitioner's right to petition for the writ."  Id. at *3–4.  It was both "logical" and "reasonable" in the circumstances to name the Field Office Director of the region where the petitioner was last known to have been detained, as well as "more senior respondents with regional or national enforcement powers, who would retain 'legal authority to effectuate Petitioner's release,' regardless of his location."  Id. at *4 (quoting Rumsfeld v. Padilla, 542 U.S. 426, 441 (2004), then string-citing recent cases from various District Courts reaching similar conclusions).  Judge Burroughs further concluded that the district-of-confinement rule did "not require the Court to dismiss or transfer the action," as a properly named respondent "was within this Court's territorial jurisdiction."  Id.

The relevant facts here are no different—and certainly not materially so—than those in Van Tran.  For all of the reasons the jurisdictional challenge foundered in that case, it founders in this one.  The Court endorses and incorporates by reference Judge Burroughs's analysis of the

---

[4] There, as here, the government raised a jurisdictional challenge.  In Van Tran, however, the government did not request dismissal; it sought an order transferring the case to the United States District Court for the Western District of New York.  2025 WL 3171210, at *2.

immediate-custodian and district-of-confinement rules.  Id. at *2–4.  In the circumstances facing

Villegas's counsel on February 13, based on the information available to him at the time he filed

this petition, the Court concludes that the petition named appropriate respondents to whom this

Court still may direct the writ.[5]

A few more points bear mention before the Court turns to the merits.  As noted, the

respondents insist that Villegas's immediate custodian remained, and should have been

understood by her counsel to be, the superintendent of the New Hampshire county jail at which

ICE had housed Villegas before her transfer.  That position is wrong.  The person running a

county jail that houses ICE detainees is, of course, the "immediate custodian" of detainees who

are present at the facility.  But how can the superintendent of a county jail in New Hampshire

"produce the body" of a woman who had been removed from his facility by federal agents hours

earlier and was on an ICE-run flight headed to Louisiana at the time the petition was filed?  The

answer, of course, is that he cannot.  The respondents, of course, cite no authority supporting

their suggestion to the contrary.  See Doc. No. 17 at 5 (citing only email from counsel noting

Villegas had been at the county jail until the morning she was transferred); Doc. No. 19 at 3

(reiterating without support that county jail superintendent "had the ability to produce the

body").[6]  No facts or law support the conclusion that the superintendent had physical custody of

Villegas after she departed his facility.

---

[5] The respondents are the Acting Director of ICE's Field Office for the region encompassing
both New Hampshire (where Villegas was held until the morning of February 13) and
Massachusetts (through which ICE transported Villegas and from which she departed New
England by plane); ICE's Acting Director; the Secretary of Homeland Security; and the Attorney
General of the United States.  The first three, at least, were logically and reasonably named at the
time of filing, given the uncertainty about Villegas's location beyond knowing she was in the
custody of ICE.

[6] The respondents' own papers never settle on who exactly filled the role of Villegas's
immediate custodian between the time she left the county jail and the time she arrived at the

Second, the respondents' suggestion that there is no basis to depart from the immediate-custodian and district-of-confinement rules here, alongside their inability or unwillingness to identify a District Court that acquired and could exercise jurisdiction over this habeas petition, raises serious Suspension Clause concerns. See U.S. Const. art. I, § 9, cl. 2. Villegas indisputably was (and remains) "in custody," detained by federal immigration authorities controlled by the Executive Branch. She undeniably has a fundamental, constitutional right to challenge her detention in a federal court somewhere by seeking a writ of habeas corpus. The only question is, where? The respondents' position in this case implies that the answer is "nowhere"—a state of affairs that lasted for several days in this case. That cannot be. If Villegas's "immediate custodian" remained in New Hampshire but she was confined in a plane flying over a different District, where was she to file her habeas petition? If her "immediate custodian" was a federal agent reporting to an office located in Arizona, but she was not headed toward and never entered Arizona on the day her petition was filed, where was she to file? This Court agrees with Judge Burroughs that, in these circumstances, Villegas could and appropriately did file her petition here.

Finally, the record establishes that Villegas's transfer to another part of the country occurred without notice to her counsel, despite her pending removal proceeding with an

---

Louisiana facility. See Doc. No. 17 at 5–6 (mentioning Field Office Director "and his officers were responsible" for "transportation to Hanscom Air Force Base," when perhaps a "Ground Officer in charge" entered the mix, before an unidentified "Flight Officer in Charge [became] responsible for . . . detainees" on the flight, but also positing that perhaps a "subcomponent of the agency" located in Mesa, Arizona, might be "responsible"). Until she arrived and was processed into the Louisiana facility—an event which did not occur until days later, following her involuntary odyssey around the southern United States—ICE's own handbook regarding air transfer operations reflects that the "sending" field office retains responsibility for case management and other administrative tasks. See Doc. No. 14 at 3 (citing and linking to page 6 of the handbook).

9

upcoming hearing date in Massachusetts for which she was represented by counsel who had filed a formal entry of appearance.  This was apparently contrary to multiple directives contained in ICE's policy governing detainee transfers, as described in the petition.  Doc. No. 1 ¶¶ 25–27, 48.  The respondents do not dispute Villegas's description of the policy or her allegations that it was violated.  See Doc. No. 17 at 9 (implicitly conceding the transfer occurred without notice to counsel who "appears to have notice of [sic] when he was unable to visit her," but arguing Villegas "has not pled sufficient facts to show that" it "was done in bad faith").  The absence of notice, paired with the absence of responses to requests for information in the wake of the transfer, bears on jurisdiction here, as it prevented counsel from learning Villegas's custodian or place of confinement before filing the petition.  It also impacts the Court's assessment of remedy, as explained below.

III.    MERITS

Having explained why jurisdiction lies here, the Court turns to the merits of Villegas's claims.  The Court begins, as the parties do in their briefing, by assessing whether Villegas is subject to mandatory detention under 8 U.S.C. § 1225(b)(1).  She is not.  Here, again, the Court is aided by the analysis of colleagues who have recently confronted similar facts.

In Gutierrez Cabello v. Moniz, Judge Talwani had before her a petitioner who arrived in ICE custody via a series of immigration-related encounters similar to those Villegas has experienced.  Gutierrez Cabello entered the United States without inspection, encountered border patrol on arrival, was detained and issued a notice of expedited removal under § 1225, claimed a credible fear of returning to his home country, and received a positive determination from USCIS endorsing his showing of credible fear.  Mem. & Order at 1–2, No. 25-cv-13213 (D. Mass. Nov. 26, 2025), ECF No. 17.  USCIS then issued a Notice to Appear and released him on humanitarian parole.  Id.  Less than two years later, Gutierrez Cabello was detained by ICE

following a car accident that yielded traffic citations, pursuant to a Form I-200 arrest warrant. Id. at 2–3. Citing the respondents' designation of Gutierrez Cabello on his NTA as "an alien present in the United States," rather than "an arriving alien" (the statutory term used throughout § 1225), coupled with the arrest pursuant to a warrant that expressly invoked § 1226, Judge Talwani concluded the petitioner's detention was governed by § 1226. Id. at 4–6; see also Mem. & Order, Aboga v. Wesling, No. 26-cv-10178-NMG (D. Mass. Mar. 6, 2026), ECF No. 19 (citing NTA and arrest warrant as showing government had "reclassified" petitioner's custodial status after initial grant of humanitarian parole from § 1225 to § 1226).

The same is true here, and for the same reasons. Though Villegas's custody began under § 1225(b) when she arrived in the United States, the respondents' treatment of her thereafter—in particular, the category designation chosen on her NTA in 2024, and the warrant pursuant to which she was arrested late last year—evidences their reclassification of her as a noncitizen subject to discretionary detention under § 1226(a). She is therefore entitled to a bond hearing.

Beyond this claim, Villegas's petition asserts several others arising from her transfer out-of-state, away from her lawyer and her pending state- and immigration-court matters, and from ICE's failure to follow its own policies and directives. See Doc. No. 1 ¶¶ 49–54, 60–75 (alleging substantive due process violation, violation of federal immigration statutes, First Amendment violation, and violation of Administrative Procedure Act). The respondents' only retort to these claims characterizes them as falling beyond the appropriate scope of habeas review. See Doc. No. 11 at 8–9. For reasons capably expressed by Villegas, Doc. No. 16 at 11–16, the circumstances presented permit the Court to require—and warrant requiring—the respondents to return Villegas to New England. Such an order concerns the conditions of Villegas's confinement and is likely to impact its duration. It is therefore within this Court's habeas

11

jurisdiction.  It also is an appropriate remedy for the respondents' failure to provide advance notice of the transfer and their subsequent failure to adhere to this Court's stay-of-transfer order. That order issued while Villegas was in transit, at a time when ICE's own policies assign responsibility for "case management" to the "sending" field office.  Doc. No. 14 at 3.  Here, the Court finds that adherence to its stay-of-transfer order was the responsibility of the respondents—including the Acting Field Office Director of ICE Boston (in Burlington).  The unexplained transfers of Villegas from place to place in the days following February 13— without returning her to Massachusetts or seeking clarification—contravened that order.

For all of the foregoing reasons, Villegas is entitled to habeas relief.  The Court now turns to the scope of that relief.

IV.    RELIEF

As explained above, this Court has jurisdiction to adjudicate Villegas's habeas petition, and the petition is ALLOWED.  The Court finds that the following relief is warranted:

1.    The respondents—who chose to transfer Villegas from New England to Louisiana, without notice to her counsel, ten days before her individual merits hearing was set to occur in Chelmsford—are hereby ORDERED to fly Villegas back to the District of Massachusetts at no cost to her by March 25, 2026.  The respondents shall notify Villegas's counsel in this case of the travel arrangements, including the time and location of her anticipated arrival in Massachusetts.

2.    The respondents are further ORDERED to release Villegas from custody by 6 PM on Friday, March 27, 2026, unless she is provided a bond hearing under 8 U.S.C. § 1226(a) between the time she arrives back in Massachusetts and March 27 at 6 PM.  If a bond hearing occurs, the respondents may not at the hearing argue that Villegas is or should be detained pursuant to 8 U.S.C. § 1225, nor may Villegas be ordered detained pursuant to § 1225, and the burdens of proof at the hearing are as resolved by the First Circuit in Hernandez-Lara v. Lyons, 10 F.4th 19

(1st Cir. 2021). The respondents shall provide Villegas's counsel with advance notice of the date and time of any bond hearing.

3.      Should Villegas be detained, either because bond is denied or because bond is set but not paid, the respondents shall detain her in New England, within the jurisdiction of the Chelmsford Immigration Court. Villegas's right to due process includes a right to the assistance of counsel for her pending proceedings. The respondents shall notify Villegas's counsel in advance of any transfers in accordance with their own policies and directives.

4.      The respondents shall not retaliate against Villegas—at her bond hearing, in the context of her removal proceedings, otherwise—for filing this petition.

5.      The respondents shall file a status report no later than March 30, 2026, describing their compliance with this Order.

SO ORDERED.

 /s/ Leo T. Sorokin
United States District Judge

13